```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
              Criminal No. 15-86(1)(DSD/JSM)
```

United States of America,

       Plaintiff,

v.                                                         **ORDER**

Mark Arlin Hammerschmidt,

       Defendant.

    Michelle E. Jones, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415, attorney for plaintiff.

    James E. Ostgard, II, Esq. Ostgard Law Office, P.O. Box 582536, Minneapolis, MN 55458, attorney for defendant.

This matter is before the court upon the objections by defendant Mark Arlin Hammerschmidt to the August 28, 2015, report and recommendation of United States Magistrate Judge Janie S. Mayeron (R&R). The R&R recommends denial of Hammerschmidt's motion for suppression of confessions or statements. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court overrules the objections and denies the motion to suppress.

**BACKGROUND**

The background of this matter is fully set forth in the R&R, and the court incorporates those facts by reference. On February 9, 2012, federal agents executed a search warrant at Hammerschmidt's home. During the search, agents interviewed

Hammerschmidt in his dining room.  Hammerschmidt does not object to the R&R's description of the search or the interview, except to highlight that agents had guns drawn as they entered his home and that one of the agents blocked his access to the dining room door during questioning.  As a result, it is undisputed that (1) before the interview, special agent Brian Pitzen told Hammerschmidt that he was not under arrest and that he was free to leave at any time; (2) Hammerschmidt consented to the interview; (3) before beginning the interview, Pitzen read Hammerschmidt a statement of rights, which included admonitions that he could not be compelled to self-incriminate and that any information provided could be used against him in a criminal proceeding; (4) Pitzen advised Hammerschmidt that he had the right to seek the assistance of counsel; (5) after securing Hammerschmidt's consent, Pitzen[1] and special agent Kenneth Fry conducted an interview in the dining room that lasted an hour and twenty minutes; (6) Hammerschmidt was cooperative and the interview was casual and cordial in tone; (7) the interview concluded when Hammerschmidt indicated he wanted to hire an attorney; and (8) Hammerschmidt was not arrested after the interview and was permitted to leave his home while the search continued.  Based on these and other undisputed facts, the R&R recommends that the court deny Hammerschmidt's motion to suppress

---

[1] Approximately 30 minutes into the interview, special agent Marissa Pitzen took over for Brian Pitzen.

statements made during the interview. Hammerschmidt objects to that recommendation.

**DISCUSSION**

The court reviews the report and recommendation of the magistrate judge de novo. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b); D. Minn. LR 72.2(b).

Hammerschmidt argues that his statements were the product of a custodial interrogation and should be suppressed because he was not read his Miranda rights. The magistrate judge, having conducted an evidentiary hearing, determined that under the totality of the circumstances, Hammerschmidt was not in custody during the interview. The court agrees.

"Officers must inform suspects of their Miranda rights before subjecting them to custodial interrogations. Failure to do so results in a violation of the suspect's Fifth Amendment rights and renders any statement gained from the violation inadmissible in the government's case-in-chief." United States v. Sanchez, 676 F.3d 627, 630 (8th Cir. 2012) (citation omitted). In determining whether an interrogation was custodial, the court considers several factors, including:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained

3

>  freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and] (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990). "The analysis depends upon a review of the totality of the circumstances, and [t]he ultimate test is whether a reasonable person in that position would have felt free to end the interview." Sanchez, 676 F.3d at 630-31 (alteration in original) (citation and internal quotation marks omitted).

Hammerschmidt argues that the magistrate judge erred because several facts weigh in favor of a finding that the interview was a custodial interrogation. First, Hammerschmidt argues that agents' blocked his access to the dining room door during the interview, thereby restraining his freedom of movement. The record is not entirely clear in this regard[2] but even if true, Hammerschmidt does not assert that he ever asked to leave the dining room during the interview or that the agents' placement was tantamount to a non-verbal threat or physical intimidation. As a result, the court cannot conclude that Hammerschmidt was deprived of his freedom of

---

[2] Hammerschmidt does not contest the agents' testimony that they were not blocking the door to the dining room during the interview, but asserts that they were blocking the route to the door.

4

action due to the agents' placement in the dining room.

Second, Hammerschmidt argues that Pitzen advised Hammerschmidt that he was not under arrest and was free to leave during the initial chaos of the search, thus undermining its force. According to Hammerschmidt, such statements may be given less weight unless made immediately before the interview. Hammerschmidt cites to no authority in support of this proposition and the court is aware of none.

Third, Hammerschmidt argues that the R&R should have placed greater weight on the fact that he did not initiate contact with law enforcement and was caught off guard by the search warrant. Although the court agrees that the circumstances were no doubt stressful, the record shows that Hammerschmidt "voluntarily acquiesced" to the interview and that the tone of the interview was casual and cordial. See Griffin, 922 F.2d at 1349 (emphasis added) (considering "whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions" in assessing whether interview was custodial).

Fourth, Hammerschmidt argues that the statement of rights read by Pitzen led him to believe that the agents would not ask incriminating questions. Hammerschmidt's interpretation of the statement is unreasonable. The statement of rights reads, in relevant part, as follows:

5

>     In connection with my investigation of your tax liability
>     (or other matter), I would like to ask you some
>     questions.  However, first I advise you that under the
>     5th Amendment to the Constitution of the U.S., I cannot
>     compel you to answer any questions or to submit any
>     information if such answers or information might tend to
>     incriminate you in any way.

The passage plainly advised Hammerschmidt that he could not be compelled to self-incriminate; it does not contain a promise - or even imply - that the agents would not ask incriminating questions. Indeed, given the ongoing search of Hammerschmidt's home, it is not credible to suggest that Hammerschmidt believed the agents were there to ask innocuous questions.

Fifth, Hammerschmidt argues that the R&R does not place sufficient weight on the fact that law enforcement dominated the interview environment.  Although that was plainly the case given the ongoing search, the court agrees that this fact is not dispositive.  Indeed, "[a]ny warrant search is inherently police dominated; there is nothing untoward about that circumstance." United States v. Perrin, 659 F.3d 718, 721 (8th Cir. 2011).  There is nothing unique about the circumstances presented to warrant a different conclusion.

Finally, Hammerschmidt argues that the R&R does not adequately consider the fact that he did not have unrestrained freedom of movement during the interview because agents told him he could not move freely around the house.  Given the ongoing search and associated safety concerns, Hammerschmidt was properly advised that

he could not have full or unaccompanied access to his home. Hammerschmidt does not argue, nor can he, that he was restricted from leaving his home, using the rest room, getting a drink of water, or the like.  Indeed, when Hammerschmidt indicated he would hire an attorney, agents stopped the interview and allowed him to leave the home.

Given the totality of the circumstances, the court cannot conclude that Hammerschmidt's interview constituted a custodial interrogation.  As a result, the court overrules Hammerschmidt's objections to the R&R.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. The R&R [ECF No. 75] is adopted in its entirety; and
2. Defendant's objections to the R&R [ECF No. 85] are overruled.

Dated:  September 9, 2015

    s/David S. Doty
    David S. Doty, Judge
    United States District Court